IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JACK CLAYTON, *as the administrator of the Estate of* TIMOTHY CLAYTON, : : : | |
| Plaintiff, : : | |
| v.  : : | Case No. 1:24-cv-139 (LAG) |
| SHERIFF LEE CONE, *et al.*, : : | |
| Defendants. : | |

**ORDER**

Pending before the Court is a Brief filed on behalf Defendants Genesys Health Alliance, LLC, Donna Moss, Drancy Sanders, and Bianca Brown (hereafter, "Genesys Defendants") (Doc. 51) as well as Plaintiff's Third Motion to Compel[1] (Doc. 52). On August 12, 2025, Plaintiff's counsel contacted the Court's Career Law Clerk via email seeking "intervention regarding two improper instructions not to answer given during the August 11, 2025 deposition of Defendant's employee, Nurse Moss." On August 25, 2025, this Court entered an Order directing the Parties to submit limited briefing on the deposition questions propounded to Nurse Moss that relate (1) to any indemnification agreement between Nurse Moss and the Genesys Defendants or (2) to any conflict-of-interest waiver signed by Nurse Moss. (Doc. 49). The matter has been fully briefed by the Parties and is now ripe for the Court's consideration. (Docs. 51, 52, 53).

---

[1] Plaintiff filed a motion to compel seeking an order from this Court directing Nurse Moss "to answer deposition questions that Genesys's counsel improperly blocked, and to require production (or in camera submission) of any indemnity, fee-payment, joint-defense/common-interest, and conflict-waiver documents between Genesys and the individually-named nurses." (Doc. 52, at 1).

I.  **Background**

Nurse Donna Moss is named as a Defendant in this case. During her deposition, Plaintiff's counsel, Mr. Krause, asked the following questions:

Q.  What happens in the event that liability, meaning that responsibility is determined, have you worked out any agreement with Genesys where they will make sure that you, personally, aren't impacted? Or . . . do you have any—any agreement with regards with Genesys to protect you?

Q.  Okay. So, the—so what I'm trying to understand is, if there's any financial obligation of Genesys to protect you, personally, in the event of liability?

Q.  Okay. And did you sign any conflict waiver about the potential conflict of someone representing you, Genesys, and Brown, and Sanders?

Q.  Okay. So what I'm asking about whether or not there's any—if a conflict waiver has been signed or not?

(Doc. 51-1).

Mr. Peek, Counsel for the Genesys Defendants objected to the line of questioning and directed Nurse Moss to not answer on the grounds that the line of questioning, as well as the production of any indemnification agreement or conflict of interest waiver documents (1) is not relevant, (2) is protected by the work product doctrine, and/or (3) is protected by the attorney-client privilege. Plaintiff requests that this Court order Defendants to either produce any written indemnification agreement or conflict of interest waiver between Nurse Moss and the Genesys Defendants or, to alternatively, allow Plaintiff to reopen the deposition of Nurse Moss for the purpose of obtaining an answer to the questions stated above. (Doc. 52). Plaintiff also seeks reasonable expenses for holding a fourth deposition of Nurse Moss, should same be allowed by this Court. *Id.*

**II.     Discussion**

   *1.  Disclosure under Rule 26(a)(1)(A)(iv)*

Plaintiff likens any indemnification agreement between Nurse Moss and the Genesys Defendants to an insurance agreement between an insured and its insurer. Federal Rule of Civil Procedure 26(a)(1)(A)(iv) requires the automatic disclosure of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." The Court is not persuaded by Plaintiff's argument that "[a]n employer's agreement to indemnify an employee for a judgment functions as the practical equivalent of an insurance agreement for the purpose of this rule[.]"[2] (Doc. 52, at 11-12). Contrary to Plaintiff's argument, the 1970 Advisory Committee Notes expressly state the "provision applies only to persons 'carrying on an insurance business' and thus covers insurance companies and not the ordinary business concern that enters into a contract of indemnification. Thus, the provision makes no change in existing law on discovery of indemnity agreements other than insurance agreements by persons carrying on an insurance business." Fed. R. Civ. P. 26 Advisory Committee Notes 1970 Subdivision (b)(2) – Insurance Policies. Here, Plaintiff's line of questioning does not suggest that an insurance business is a party to the agreement; rather, it concerns agreements between Nurse Moss and Geneys Healthcare. Therefore, Rule 26(a)(1)(A)(iv) is not applicable, and automatic disclosure is not required.

---

[2] Plaintiff made an equally unavailing argument regarding common interest agreements and fee/retainer agreements. While Plaintiff is correct that Courts in the Eleventh Circuit have routinely held that fee agreements are not privileged communications, this Court finds indemnification agreements and a waiver of conflict-of-interest agreements distinguishable. For example, the common interest doctrine only applies to disclosures made to a third party. See *Price v. Safelite Sols., LLC*, No. 2:21-cv-00139-RWS-JCF, 2022 WL 22983031, at *1 (N.D. Ga. Dec. 5, 2022), *adopted in relevant part by* 2023 WL 12170966 (N.D. Ga. Mar. 7, 2023).

*2. Relevance and Proportionality*

Plaintiff contends that defense counsel's objections during Nurse Moss's deposition were improper because questions regarding the existence of an indemnification agreement or a conflict-of-interest waiver are relevant to Plaintiff's claims. Plaintiff argues that such questions bear on whether Nurse Moss has any potential bias that might incline her to testify favorably for her employer.

> Parties may obtain discovery regarding any **nonprivileged** matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Additionally,

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

> Moreover, a 1993 Advisory Committee Note states that a
>
> party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product-protection. To withhold materials without such notice is contrary to the rules, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection. The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.
>
> Finally, Federal Rule of Civil Procedure 26(f)(3)(D) requires parties – from the outset of

litigation – to develop a discovery plan that states the "parties' views and proposal on: any issues

about claims of privilege or of protection as trial-preparation materials, including – if the parties agree on a procedure to assert these claims after production – whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502[.]"

Relevance under Rule 26(b)(1) is broadly construed. *See, e.g.*, *Washington v. Brown & Williamson Tobacco Corp.*, 106 F.R.D. 592, 593 (M.D. Ga. 1985) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Plaintiff argues that the existence of any such agreements is directly relevant to the witness's potential for bias. Plaintiff also believes the information is relevant to the question of "allocation of damages" and apportionment between the defendants if they are found liable. (Doc. 52, at 10).

"[P]roof of bias will typically be relevant." *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018) (citing *United States v. Abel*, 469 U.S. 45, 52, (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.")). On the other hand, "[p]roportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Quiterio v. QBE Specialty Ins. Co.*, No. 8:16-cv-1895-T-35JSS, 2019 WL 13064730, at *1 (M.D. Fla. Nov. 8, 2019) (citation omitted).

The Court agrees with Plaintiff that the existence of an indemnification agreement may be relevant because it could show bias or be used to impeach a witness. However, the test under Rule 26 requires that the information be both relevant *and proportional* to the needs of the case. Courts

> consider the following factors when evaluating whether requested discovery is proportional to the needs of the case: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Centennial Bank v. Servisfirst Bank Inc.*, No. 8:16-cv-88-T-36JSS, 2016 WL 3574587, at *3 (M.D. Fla. July 1, 2016) (quoting Fed. R. Civ. P. 26(b)(1).

With respect to the first factor, the Court struggles to ascertain how the terms of an indemnification agreement or conflict-of-interest waiver are important to the issues at stake in the action. First, this is a wrongful death case. The parties' dispute centers on whether Mr. Timothy Clayton died as a result of "being deprived of insulin for more than seventy (70) hours while confined as a pretrial detainee at the Ben Hill County Jail." (Doc. 52, at 2). Second, this Court can find no binding or persuasive legal authority that says potentially conflicting testimony between Nurse Brown, Nurse Sanders, and Nurse Moss is sufficient to destroy a valid privilege. Third, Nurse Moss is currently employed by Genesys Healthcare. Plaintiff argues that the line of questioning at the deposition of Nurse Moss "concerns the existence of a contractual or financial relationship between a party and its employee-defendant – issues that are routinely discoverable to explore bias and control." (Doc. 52, at 6). Any potential bias because of an indemnification agreement between the parties is just as likely to be presumed because she is their employee. Appropriately balancing the importance of resolving the ultimate issue in this wrongful death case against Plaintiff's lack of physical access to any indemnification agreement or conflict-of-interest waiver between Nurse Moss and the Genesys Defendants, Plaintiff's line of questioning is not proportional to the needs of the case. Nevertheless, even if this Court were to find that the deposition questions asked of Nurse Moss were relevant and proportional to the needs of the claims or defenses in the case, Plaintiff has not shown a substantial need for the documents to prepare his case.

### 3. Work Product and Attorney/Client Privilege

In addition to opposing deposition questions about any indemnification agreement or conflict-of-interest agreement, the Genesys Defendants also oppose the production of such documents. Since they oppose production, it is their burden to establish that the work product doctrine applies. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013) (citations omitted). Here, the Genesys Defendants claim "[a]ny such indemnity or defense agreement would have been discussed and structured by counsel in anticipation of litigation. It therefore reflects privileged communications concerning litigation strategy, liability assessment, and defense responsibilities." (Doc. 51, at 4).

"The work product doctrine protects from production documents and other 'tangible things' that were 'prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *Centennial Bank*, 2016 WL 3574587, at *4. (quoting Fed. R. Civ. P. 26(b)(3)(A)). "[W]ork product may be discovered if it is 'otherwise discoverable under Rule 26(b)(1)' and the party seeking production 'shows that it has **substantial need for the materials to prepare its case** and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Centennial Bank v. ServisFirst Bank Inc.*, No. 8:16-cv-88-T-36JSS, 2019 WL 10375478, at *2 (M.D. Fla. Mar. 26, 2019) (emphasis added). "Some cases have found substantial need by emphasizing the importance of the documents themselves. One common justification for discovery is the claim which relates to the opposite party's knowledge that can only be shown by the documents themselves." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982). The burden to establish substantial need for the materials to prepare its case rests with the Plaintiff, and Plaintiff has failed to meet that burden. Plaintiff speculates that production of the

7

agreements may show bias and could be relevant to the issue of damages, but neither of those arguments establish substantial need. "Ultimately, the party seeking to overcome the privilege has the burden of showing a substantial need and 'mere conclusory assertions will not suffice.'" *Centennial Bank*, 2019 WL 10375478, at *2 (quoting *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 643 (S.D. Fla. 2011)).

Finally, the Parties do not dispute that attorney/client privilege and work product privilege do not extend to facts. *See Upjohn v. United States*, 449 U.S. 383, 395-96 (1981). Indeed, the work product privilege does not protect factual information from disclosure. Rather, it protects a party who possesses a document from producing it, "even if the document contains only factual information." *Stern v. O'Quinn*, 253 F.R.D. 663, 687 (S.D. Fla. 2008). "However, because the work product privilege does not protect the facts in that document (the privilege protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories." *Id.* (quoting *ECDC Env't, L.C. v. New York Marine & Gen. Ins. Co.*, No. 96CIV.6033(BSJ)(HBP); 1998 WL 614478, at *16, (S.D.N.Y. June 4, 1998) (other citations omitted)). Contrarily, it is appropriate to "propound interrogatories and take depositions to obtain the sought-after **factual** information." *Centennial Bank*, 2019 WL 10375478, at *3 (emphasis added) (quoting *Spirit Master Funding LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 687 (N.D. Ga. 2012)).

Plaintiff argues that his line of questioning for Nurse Moss did "not seek the substance of privileged attorney-client communications, but rather the factual existence of a waiver[.]" (Doc. 52, at 13). Instead, the line of questioning "sought to establish the foundational fact of whether the process of obtaining informed consent occurred." *Id.* at 14. Plaintiff further argues, "[t]he existence of a conflict waiver is a fact, not a communication. If a written waiver exists, the document itself

is not privileged." *Id.* Contrarily, the Genesys Defendants argue that "the content or existence of any such arrangement would constitute opinion work product, reflecting counsel's strategic evaluations, afforded nearly absolute protection. Thus, any existence or non-existence of an indemnity agreement is intertwined with counsel's legal advice. Work-product doctrine independently applies, and relevance and proportionality weigh against discovery." (Doc. 51, at 5).

The Court agrees and disagrees with the arguments made by both Parties. The Court agrees with Plaintiff that the existence of a document is a fact, not a communication. Either the document exists or it does not, and a party is entitled to know that information – whether same be propounded through interrogatories or via questioning at a deposition. However, the Court also agrees with the Genesys Defendants that the compound wording of Plaintiff's line of questioning during Nurse Moss's deposition warranted an appropriate objection to the questions at issue because they extended beyond the mere existence of any such agreements. Plaintiff's question began with, "What happens in the event that liability . . . is determined[?]" (Doc. 51-1). The line of questioning continued to ask, "And did you sign any conflict waiver about the potential conflict of someone representing you, Genesys, and Brown, and Sanders?" *Id.* Nevertheless, the Court finds that the existence – or not – of any indemnification agreements or waivers of conflict-of-interest agreements are not protected by the work product or attorney/client privilege. Therefore, Plaintiff is allowed to know whether those documents exist and whether they are being withheld from production.

To the extent Nurse Moss and the other Genesys Defendants seek to withhold production of any otherwise relevant documents based on a claim of privilege or attorney work product, Defendants must comply with <u>all</u> provisions of Rule 26, as well as the Advisory Committee Notes.

Thus, the Parties must **either** produce a discovery plan in compliance with Federal Rule of Civil Procedure 26(f)(3)(D) **or** Nurse Moss must notify Plaintiff via a privilege log if she is withholding materials otherwise subject to disclosure because they are asserting a claim of privilege or work product-protection. If no such documents exist, Nurse Moss is directed to notify Plaintiff's counsel within five (5) business days of this Order that she is not withholding the production of any indemnification agreement or conflict of interest waiver under a claim of privilege or work product. If the Parties follow this Court's instructions and do what should have been done at the outset of this litigation, there should be no need to reopen the deposition of Nurse Moss.

### III.  Conclusion

Accordingly, Plaintiff's Third Motion to Compel (Doc. 52) is **DENIED** without prejudice.[3] Defendant Nurse Moss is **ORDERED** to provide the information as outlined in this Order no later than **FIVE (5) BUSINESS DAYS** from the date of this Court's Order.

**SO ORDERED**, this 18th day of November, 2025.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff's Third Motion to Compel requests as relief reasonable expenses in the amount of $819.60 for two depositions wherein it is alleged that Nurse Moss failed to appear on May 13, 2025 and July 21, 2025. (Doc. 52, at 15-16). This request is not appropriately before this Court, as it exceeds the instruction given by the Court regarding the issue at hand. (Doc. 49). If Plaintiff wishes to bring this matter before the Court, he should file a separate motion setting forth the appropriate legal authorities supportive of his claim. This Court makes no ruling as to this matter, at this time.